(No. 40048.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* NORMAN REED, Appellant.

*Opinion filed March 29, 1967.*

WARD, J., took no part.

WALTER LA VON PRIDE, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and RONALD SANDLER, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Norman Reed, was tried and convicted in a bench trial in the circuit court of Cook County for unlawful possession of narcotics. He was sentenced to the Illinois penitentiary for a term of two to three years. He appeals directly to this court contending that a packet of narcotics found in his automobile and introduced into evidence against him was the product of an illegal search and seizure.

The testimony elicited at the motion to suppress shows that on May 6, 1965 the defendant was operating his automobile on a Chicago street around noon when he was stopped by two police officers. The officers informed Reed that his rear license plate was missing and asked to see his driver's license. The license was produced by Reed as well as a valid registration card showing that he had previously purchased front and rear license plates. The officers then took Reed to the rear of his car to see for himself that the license plate was missing.

The testimony of the arresting officers was that the defendant Reed behaved in a nervous fashion, moving his hands around and looking from side to side. When they took him to the rear of the car, according to the officers, Reed "kept looking over toward his car." Because of this behavior defendant was asked if he had any weapons and upon being told that he did not the officers searched him. No weapons were found, but, still suspicious, the officers decided to take the defendant to the police station in order

to "check him out." Before doing this, however, one of the police officers proceeded to search the automobile and found a bag containing a white powder under the springs of the front seat. This powder, later identified as heroin, was the evidence defendant sought to suppress. At the close of the testimony heard on the motion to suppress the evidence, the motion was denied. A subsequent bench trial resulted in defendant's conviction.

The first issue presented is whether the so-called "nervous" behavior of Norman Reed at the time he was stopped for a traffic violation warranted the search of his automobile. It is our opinion that it did not. It is undisputed that the only reason the defendant was stopped in the first place was because his rear license plate was missing. It is further undisputed that, although the defendant may have behaved in a nervous manner, at no time did he threaten the arresting officers, use abusive language, talk in a loud voice, or attempt to escape. The occurrence took place in broad daylight on a Chicago street. The defendant had valid identification for both himself and his automobile. The arresting officer admitted that the only reason they searched the defendant and his automobile was because of his "nervous" behavior.

In *People* v. *Watkins,* 19 Ill.2d 11, we held that every arrest for a traffic violation does not automatically justify a search of the arrested person. We went on to point out, however, that some traffic violations would justify such a search and counsel for the State argues that such a situation is present here, relying on *People* v. *Thomas,* 31 Ill.2d 212; *People* v. *Zeravich,* 30 Ill.2d 275; and *People* v. *Watkins,* 19 Ill.2d 11.

In *People* v. *Thomas* the defendant was operating his vehicle at 5:00 A.M. without proper lights. When stopped by the police the defendant admitted that he did not have a driver's license and that he had just been released from jail. Under these circumstances the trial court properly ruled that the police officers were justified in searching the de-

fendant and the area under the front seat of his automobile for their own protection before taking him to the police station for the traffic offense.

In *People* v. *Zeravich,* 30 Ill.2d 275, the defendant was stopped by the police for a traffic violation. He was not searched, however, until the arresting officers noticed that the description of his clothing matched that of a person suspected of crimes in the vicinity.

Here the arresting officers testified that aside from his "nervous" behavior they had no reason to suspect the defendant Reed of having committed anything more serious than driving without a rear license plate.

The holding in *Watkins* was that the evidence of parking too close to a crosswalk, in itself, does not justify a search. We went on to point out, however, that some traffic violations would present such justification, citing *People* v. *Berry,* 17 Ill.2d 247, where it was held that the total absence of license plates could reasonably suggest a serious violation of the law for which a search could be made. In the *Berry* case the defendants had neither front nor rear license plates nor a city vehicle sticker. In the case before us, however, the defendant was only missing the rear plate and had his registration card to indicate that his automobile had been properly registered with the Illinois Secretary of State.

We have no quarrel with the rule enunciated in *People* v. *Zeravich,* 30 Ill.2d 275, to the effect that when circumstances reasonably indicate that the police may be dealing not with an ordinary traffic violator, but with a criminal, then the search of the driver and his vehicle is authorized in order to insure the safety of the police officers and to prevent an escape of the "might-be" criminal. A review of the evidence before us convinces us that the facts do not bring this search within that rule. The so-called "nervous" behavior of the defendant, as described by the arresting officers, did not justify the search of the defendant's automobile.

The State also briefly suggests that the search may be justified on the basis of defendant's consent. On the motion to suppress the State attempted to justify the search as a reasonable one incidental to a lawful arrest. However, at the conclusion of the cross-examination of the second of the arresting officers, defendant's attorney asked if defendant gave his consent to search the car. When the officer replied in the affirmative, defendant's counsel asked: "What did you ask him about the car?", and the officer answered, "We said what about the car and he said look." By this remark the State apparently contends that the police officers had the consent of the defendant to conduct the search. While we are aware that consent is a waiver of the constitutional privilege against unreasonable search, (*People v. Harris,* 34 Ill.2d 282; *People v. Henderson,* 33 Ill.2d 225,) we do not feel that the record in this instance establishes a waiver of the constitutional privilege against unreasonable searches. While the question of whether or not consent has been given in a particular situation is a fact question to be determined initially by the trial judge, the State did not rely on consent in order to justify search in this case. The State cannot now sustain the denial of the motion to suppress on the basis of a single equivocal statement adduced on cross-examination of one of the arresting officers. We do not believe that the State has adduced a preponderance of evidence to show that defendant consented to the illegal search.

In conclusion, therefore, we hold that the narcotics offered in evidence were the product of an illegal search and seizure and that the evidence should have been suppressed. The trial court's failure to do so constituted reversible error and, accordingly, the decision of the trial court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.